

**U.S. Department of Justice**

APR - 7 2005

*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (413) 785-0235*
*Facsimile: (413) 785-0394*

*Federal Building & Courthouse*
*1550 Main Street, Room 310*
*Springfield, Massachusetts 01103-1422*

March 30, 2005

Richard Egbert
Law Offices of Richard Egbert
99 Summer Street
Boston, MA 02110

      Re: All States Asphalt, Inc.

Dear Attorney Egbert:

      This letter sets forth the Agreement between the United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, All States Asphalt, Inc. ("Defendant"), in the above-captioned case.  The Agreement is as follows:

      1.   <u>Change of Plea</u>

      At the earliest practicable date but in no event later than April 15, 2005, Defendant shall waive indictment and plead guilty to the attached one-count information.  Defendant expressly and unequivocally admits that it knowingly, intentionally and willfully committed the crime charged in count one of the Information and is in fact guilty of the offense.

      2.   <u>Penalties</u>

      Defendant faces the following maximum penalties: a fine of $500,000.

      3.   <u>Sentencing Guidelines</u>

      The sentence to be imposed upon Defendant is within the discretion of the sentencing Court, subject to the statutory maximum penalties set forth above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder, as modified by <u>United States v. Booker</u>

EXHIBIT A

COMPLIANCE AGREEMENT

As a Special Condition of Probation in the above matter, the defendant, All States Asphalt, Inc. ("All States"), agrees to comply with the provisions set forth herein while operating as an interstate motor carrier.

(1)  Safety Director

All States shall, within 30 days of the effective date of this Compliance Agreement, designate an employee as its Safety Director.    This person shall become competent in all applicable parts of the Federal Motor Carrier Safety Regulations (FMCSRs) and state motor vehicle laws.    The Safety Director shall report directly to the Chief Operating Officer of All States.    The Safety Director shall be responsible for:

(a)  the training of all drivers in all areas of FMCSRs, including the definitions of the following terms contained in 49 C.F.R. § 395; off-duty - § 395.8(h)(1), driving - § 395.8(h)(3), and on-duty not driving - § 395.8(h)(4).    The Safety Director will ensure that all hours worked while loading or unloading are recorded properly and accurately according to 49 C.F.R. § 395.8(h)(4).

(b)  verifying the accuracy of all logs and supporting documents submitted by each driver on a weekly basis.

(c)   conducting and documenting quarterly safety meetings with all drivers.  Documentation of safety meetings (which will include the name and signature of attendee and date and location of the meeting) will be maintained on file for a period of one year.

(2)   <u>Outside Auditor</u>

All States will engage an outside auditor to conduct quarterly comprehensive compliance reviews of all activities related to the FMCSRs and prepare a written report of the results of each review, indicating each deficiency or violation found. The Safety Director will respond in writing to any deficiencies or violations noted by the auditor, with the response to include a plan for corrective action.  Copies of the auditor's reports and the Safety Director's response will be sent to the Department of Transportation, Office of Inspector General, 55 Broadway, Room 1055, Cambridge, Massachusetts, 02142.  The written reports will be maintained on file at All States for the period of probation.

Effective following the execution of this agreement, All States' outside auditor will conduct an analysis and prepare a report described below of each route driven by All States drivers in any given day.  The routes will include single, double, and triple runs (those with deliveries to the same

2

customer), as well as runs which combine multiple delivery locations. An analysis and report will be required for the the first trip of each route driven by All States drivers following the execution of this Agreement. The analysis and report will indicate all legs of the route and the load and unload locations (i.e. Petro Canada, East Montreal, Quebec and/or Barrett's Norwood, NY or Hanson, Ogdensburg, NY) and will determine the driving time and on-duty not driving time required to complete the trip. The report will include an analysis of the CADEC logbook, Activity Report, Unassigned Activity Report for the vehicle, DOT Violation Report, Speeding Violations Report, Personal Travel Report and Vehicle Summary Report for Unassigned Miles regarding the particular vehicle utilized in the drive. A report of each analysis, along with all supporting CADEC documents, will be forwarded to the Department of Transportation, Office of Inspector General ("DOT-OIG"), 55 Broadway, Room 1055, Cambridge, Massachusetts, 02142, within fourteen days of the completion of the trip to which the report pertains. No driver will be dispatched to any route or combination of routes which, based on the analysis, would require in excess of 11 hours of driving time.

hours available for the next eight-day period.   All States will
not dispatch drivers unless they retain adequate and available
on-duty and driving time, pursuant to 49 C.F.R. § 395, to
complete the trip.   Specifically, All States shall not require or
knowingly permit a driver to operate a motor vehicle in violation
of the Hours of Service Regulations set forth in 49 C.F.R. § 395.

   (4)   Accident Reports

   All States shall obtain police records for all
accidents/crash involving vehicles under its control and damage
estimates from all parties involved in the accident/crash.   All
States shall keep records indicating if any vehicle was towed and
the entity that performed the towing.   All States shall provide
all required information to determine if the occurrence meets the
definition of an accident/crash as described by 49 C.F.R.
§ 390.15 and maintain an accident register, with all reports in a
carrier file.

   (5)   Regulatory Reviews

   All States will request and submit to a comprehensive
Compliance Review (CR) by the Federal Motor Carrier
Administration (FMCSA) to take place within six months from the
execution of this agreement.   It is understood and agreed that a
"compliance review" conducted by the FMCSA may include review of
records documenting activities which occurred prior to the date

of this Agreement.  It is further understood and agreed that
compliance reviews may be conducted at any time within the Term
of this Agreement without regard to any other FMCSA policies
regarding the determination of when and whether to subject motor
carriers to such reviews.  It is further understood and agreed
that this provision shall not limit the right of the FMCSA to
conduct compliance reviews following the termination of this
Agreement in accordance with its usual practices and policies.
All States agrees it will achieve, and maintain, a Satisfactory
or better safety rating on the initial and any subsequent reviews
and will maintain such a rating through any/all subsequent CR's
during the two years following the execution of this agreement.

(6)  All States Documents

All States maintains that the documents it provides
to DOT-OIG under the terms of this Agreement are
confidential business records.  During the period of this
agreement, DOT-OIG agrees to give All States notice of any
Freedom of Information Act request for All States documents
provided to it under the terms of this agreement.  In addition,
DOT-OIG agrees to return to All States the documents All States
provides to it under the terms of this agreement following

6

completion of its review provided that the review does not result
in the necessity of further action.

Richard Miller
Chief Operating Officer
All States Asphalt, Inc.

7

## SECRETARY'S CERTIFICATE

I, Rebecca Bland, do hereby certify:

THAT I am the assistant secretary of All States Asphalt, Inc., and that at a duly authorized Special Meeting of the directors of the Corporation held at the office of the corporation on the 8th day of April, 2005, all directors being present and voting throughout the meeting, the following resolution was unanimously adopted:

The President of the Corporation reported to the meeting that its special counsel, Richard Egbert, Esq., had negotiated a Plea Agreement with the office of the United States Attorney, in Springfield, Massachusetts, to conclude the government's investigation of the company regarding allegations of Federal law violations as to driver log maintenance and related matters; the substance of which remained familiar to the directors, their having been earlier informed, from time-to-time, of the matter.

The President then distributed proposed Information and Plea Agreement, the latter dated March 30, 2005, as well as an annexed Compliance Agreement thereto, which were reviewed by the Directors,

The President also distributed a certain letter from the Assistant US Attorney with whom our counsel had concluded the said Plea Agreement, dated March 30 ,

1

2005, which recognized that the corporation's conduct determined to have been in violation of law had resulted from the actions of three (3) employees at dispatcher level, without the knowledge, or consent, of senior management personnel.

The Chief Operating officer then reported to the meeting that full compliance with all lawful requirements regarding drivers' logbook maintenance and reporting had earlier been undertaken by timely remedial action of the corporation's management immediately upon being informed of the allegations, well over three (3) years ago. He also advised that the Compliance Agreement could be satisfactorily implemented, particularly as its substantive requirements, in significant measure, had long-since been integrated into corporation policy, in any event.

The President  then assured the Directors that, after consultation with counsel: that they enjoyed the lawful right to have its Chief Operating Officer enter into said Plea Agreement on behalf of the corporation; and that so doing was in the best interests of the corporation;

After discussion, the Directors unanimously:

**VOTED:** That Richard J. Miller, Executive Vice President and Chief Operating Officer of the company be, and is hereby authorized, on its behalf, and in its

2

name: to enter into the said proposed Plea Agreement, with its annexed Compliance Agreement, and any other documents necessary to carry out its provisions; and to plead guilty to the charge specified in the Information on behalf of the corporation.

I DO FURTHER CERTIFY that the above votes have not been altered, amended, rescinded or repealed, and that signatures of all persons executing documents on behalf of the corporation are fully authorized genuine.

I DO FURTHER CERTIFY that the corporation is a duly organized Massachusetts corporation; that the foregoing special meeting was lawfully called and vote lawfully taken and all such corporate action otherwise remains lawfully in accordance with the charter and by-laws of the corporation; that David Hankowski is the duly elected and qualified President of the corporation; that David Johnson and David Hankowski are all of the directors of the corporation, and I am the duly elected and qualified assistant secretary of the corporation.

Dated at Sunderland, Massachusetts, this ___8th___ day of April 2005.

ATTEST:

Rebecca A. Bland

Rebecca A. Bland
Assistant Secretary (seal)

3

sec cert to action guilty plea